FILED

**UNITED STATES DISTRICT COURT** NOV 19 PM 3: 56
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO.**

RHONDA HUCKELBERY,

Plaintiff,          6: 14-CV-1902-OrL-18TBS

vs.

CITY OF ORLANDO,

Defendant.

_____/

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Rhonda Huckelbery (hereafter "Plaintiff" or "Huckelbery"), through her undersigned counsel, files this Verified Complaint and Demand for Jury Trial against the City of Orlando (hereafter "the City"), and alleges the following:

### NATURE OF ACTION

1.       This is an action seeking remedies for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA").

### JURISDICTION AND VENUE

2.       Sgt. Huckelbery's claims raise federal questions pursuant to ADA.  This Court has jurisdiction over Huckelbery's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.       Venue is proper because the parties reside, or are located, within the Middle District of Florida and, specifically, within Orange County, Florida, the location of the Orlando Division.  Furthermore, the acts that give rise to this action occurred in Orlando, Florida.

## PARTIES

4.      All times material to this case, Sgt. Huckelbery is and was a resident of the State of Florida in Orange County.

5.      Sgt. Huckelbery is currently employed by the City as a Master Sergeant at the Orlando Police Department ("OPD" or "the Department"). She has been continuously employed by the City at OPD since September 18, 1988.

6.      At all times material to this case, the City was a municipal agency that employed more than 15 employees, and OPD was a department of the City, which was a public employer.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

7.      Sgt. Huckelbery timely dual filed a Charge of handicap or disability discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") and with the Florida Commission on Human Relations ("FCHR"). Plaintiff has received a right-to-sue letter from the Department of Justice ("DOJ"), a copy of which is attached hereto as "**Exhibit A**", and accordingly, is permitted to proceed to court on her claims.

8.      Sgt. Huckelbery has satisfied all of the administrative procedures that were conditions precedent to filing this cause of action and has exhausted the grievance process provided by her employer with no satisfactory remedy.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9.      Sgt. Huckelbery worked as a police officer for OPD on rotating shifts that included the midnight shift in 1995 when she contracted thyroid cancer and was forced to undergo surgery as part of her treatment.

10.     The City at that time had a policy that required police officers working on the midnight shift to wear body armor, which is also referred to as protective or bullet-proof vests.

2

11.     After the thyroid surgery, Sgt. Huckelbery was unable to wear a protective vest because the edge of the vest would dig into the incision in Sgt. Huckelbery's neck and cause considerable pain.

12.     In order to accommodate Sgt. Huckelbery's medical condition, the City exempted her from its vest policy and allowed Sgt. Huckelbery to work as a police officer without wearing a protective vest.

13.     Sgt. Huckelbery continued to work with the benefit of the exemption for several years with no problems or issues.  The exemption during that time had been approved by four Police Chiefs: Tom Hulbert, William Kennedy, Jerry Demings and Michael McCoy.

14.     In 2005, the City allowed Sgt. Huckelbery to maintain the exemption and work without a protective vest. Police Chief McCoy and his successor, Police Chief Val Demings, allowed Sgt. Huckelbery to continue the exemption and work without a protective vest to accommodate her medical condition. Police Chief Val Demings was the fifth police chief who approved Sgt. Huckelbery's exemption.

15.     In 2005, in return for the continuing exemption, Sgt. Huckelbery provided a waiver relieving the City of any liability if she were injured as a result of not wearing a protective vest.

16.     Sgt. Huckelbery renewed her request for a medical exemption from wearing body armor in a written memorandum dated October 28, 2005.

17.     In 2006, Sgt. Huckelbery was diagnosed with breast cancer and was forced to undergo another surgery.

18.     Sgt. Huckelbery's treatment for breast cancer involved a bilateral mastectomy and reconstructive surgery and the insertion of breast implants.

3

19.     The cancer and reconstructive surgery resulted in a condition where the weight of the vest put pressure on the implants, which caused the incisions and muscle tissue to tear. Sgt. Huckelbery had to have additional surgeries to repair torn muscles.

20.     After Sgt. Huckelbery's cancer treatment and reconstructive breast surgery, she experienced severe pain whenever she wore the protective vest.

21.     Sgt. Huckelbery's treating physicians and surgeons periodically provided the City with written medical notification and recommended that Sgt. Huckelbery be exempted from wearing a vest in order to minimize her risk of incurring a torn muscle that could cause her to undergo another surgery.

22.     One of those physicians, Dr. Frank Delgado, provided written notification to the City on November 11, 2011, that Sgt. Huckelbery "cannot wear [a] bullet proof vest due to medical reasons."

23.     Early in 2012, shortly after taking office as Police Chief, Paul Rooney ordered Sgt. Huckelbery to wear the protective vest at all times while on duty.

24.     Sgt. Huckelbery requested the reasonable accommodation of being allowed to work in the field without wearing a protective vest.  Although Sgt. Huckelbery had been allowed to work without a protective vest for 17 years with the approval of five Police Chiefs, this time Rooney, who had been Chief for less than a year, denied the accommodation.

25.     The requested reasonable accommodation would have allowed Sgt. Huckelbery to perform the essential functions of her job as a police officer without suffering severe pain and exacerbating her injuries to the point at which additional surgery may be required.

26.     Body armor policies for law enforcement agencies frequently involve exceptions for officers with certain medical conditions that render them unable to wear protective vests.

27.     Instead of continuing Sgt. Huckelbery's exemption from the body armor requirement, the City suggested that alternative types of body armors might be available. However, at no time did the City offer any body armor option to Sgt. Huckelbery that would have addressed the concerns raised by her physician. Rather, the City maintained its position that the body armor was mandatory and otherwise ignored Sgt. Huckelbery's ongoing request for an accommodation.

28.     The City issued a written directive on April 3, 2013, making body armor mandatory for all officers in the field on the day as well as the midnight shift. The written directive referred OPD employees to a 1999 Model Policy developed by the International Association of Chiefs of Police.

29.     The 1999 Model Policy utilized by the City contained a provision that provides exemptions to the body armor policy.

30.     The 1999 Model Policy developed by police chiefs around the country and utilized for guidance by the City provides exemptions for officers: (1) who have "a medical condition that would preclude wearing body armor" as determined by "an agency-approved physician;" (2) who are working under cover; and (3) "when the department determines that circumstances make it inappropriate to mandate wearing body armor."

31.     The 1999 Model Policy applied to Sgt. Huckelbery because it provided for exemptions to the mandatory vest policy for medical conditions or when circumstances make it inappropriate to require body armor.

32.     Nonetheless, since 2012, when Rooney retracted Sgt. Huckelbery's exemption, the City has repeatedly demanded that Sgt. Huckelbery wear the vest, regardless of the pain and discomfort it caused.

33.     On March 15, 2013, Sgt. Huckelbery was transferred to the Airport Division at the Orlando International Airport (hereafter "the Airport").

34.     Sgt. Huckelbery was ordered to wear the protective vest at all times while on duty at the Airport, except when she was in OPD's Airport offices.

35.     As a result of the City's refusal to accommodate her medical condition, Sgt. Huckelbery continues to experience severe pain while on duty, and continues to subject herself to the risk of serious injury or an exacerbation of her condition.

36.     Despite the detrimental impact on her health, the City continued to deny Sgt. Huckelbery an exemption from the body armor requirement.  Instead, the City relieved Sgt. Huckelbery of her duties as a sworn law enforcement officer in November 2013 and advised her that if she was unable to return to "full duty," which the City defined as including the use of body armor, she would ultimately be terminated.

37.     Under this threat of termination, which would have resulted in the loss of her income and significant pension benefits, Sgt. Huckelbery reluctantly returned to work and agreed to wear the body armor.  In doing so, Sgt. Huckelbery has subjected herself to, and will continue to subject herself to, continued pain, discomfort and exacerbation of her medical condition.

## COUNT I
## Failure to Accommodate – The Americans with Disabilities Act As Amended
## 42 U.S.C. § 12101 *et seq.*

38.     Sgt. Huckelbery re-alleges and incorporates by reference paragraphs 1 through 37 of this Verified Complaint.

39.     At all times relevant to the claim, Sgt. Huckelbery had a disability as defined by the ADA.

40.     At all times relevant to this claim, Sgt. Huckelbery was an individual qualified to perform the essential functions of her job, with or without a reasonable accommodation.

41.     The City discriminated against Sgt. Huckelbery on the basis of her disability by refusing to provide the reasonable accommodation of continuing to allow Sgt. Huckelbery to work in the field without wearing the protective vest that severely aggravated her medical condition.

42.     The reasonable accommodation requested by Sgt. Huckelbery would have enabled her to continue to perform the essential functions of her job without pain and the risk of severely aggravating her medical condition.

43.     Sgt. Huckelbery had been granted a waiver from wearing body armor for 17 years by five prior Orlando police chiefs with no problems or issues. Thus, wearing a vest is not an essential function of the job, and the accommodation requested did not present an undue hardship for the City.  Rather than continuing this accommodation, the City proposed alternate vests that would not have effectively accommodated her disability, and otherwise ignored or rejected her request.

44.     As a result of the City's failure to provide a reasonable accommodation, Sgt. Huckelbery suffered damages, including the loss of compensation, physical pain and suffering, and mental and emotional distress. Sgt. Huckelbery also has incurred, and will continue to incur, legal fees and costs associated with the vindication of her rights.

### DEMAND FOR RELIEF

WHEREFORE, Sgt. Huckelbery respectfully demands judgment against the City of Orlando for the following damages:

i.      Lost wages and benefits;

ii.     Compensatory damages for physical pain and mental and emotional distress;

iii.    Prejudgment interest;

iv.     Reasonable attorneys' fees and costs pursuant to the ADA;

v.      Any other relief the Court deems just and proper.

## COUNT II
## Disability Discrimination – The Americans with Disabilities Act As Amended
## 42 U.S.C. § 12101 *et seq.*

45.     Sgt. Huckelbery re-alleges and incorporates by reference paragraphs 1 through 37 of this Verified Complaint.

46.     At all times relevant to this claim, Sgt. Huckelbery had a disability as that term is defined by the ADA.

47.     At all times relevant to this claim, Sgt. Huckelbery was an individual qualified to perform the essential functions of her job, with or without a reasonable accommodation.

48.     The City mandated that Sgt. Huckelbery utilize a protective vest notwithstanding her disability, her physicians' instructions, and her many years of performance of her job without utilizing such equipment.  In doing so, the City utilized standards or criteria that have the effect of discrimination on the basis of disability in violation of 42 U.S.C. § 12111(a) and (b)(3).

49.     As a result of the City's acts of discrimination, Huckelbery has been disqualified by the City from various positions, assignments and duties, and has been forced to suffer the physical consequences of utilizing protective vests in a manner contrary to her treating physicians' instructions.

50.     As a result of the City's discrimination, Sgt. Huckelbery has suffered damages, including the loss of compensation, physical pain and suffering, and mental and emotional

distress. Sgt. Huckelbery also has incurred, and will continue to incur, legal fees and costs associated with the vindication of her rights.

## DEMAND FOR RELIEF

WHEREFORE, Sgt. Huckelbery respectfully demands judgment against the City of Orlando for the following damages incurred:

i.    Lost wages and benefits;

ii.   Compensatory damages for physical pain and mental and emotional distress;

iii.  Prejudgment interest;

iv.   Reasonable attorneys' fees and costs, pursuant to the ADA and

v.    Any other relief the Court deems just and proper.

## COUNT III
## Interference With Rights – The Americans with Disabilities Act As Amended
## 42 U.S.C. § 12101 *et seq.*

51.    Sgt. Huckelbery re-alleges and incorporates by reference paragraphs 1 through 37, 39-43 and 48 of this Verified Complaint.

52.    Section 12203(b) of the ADA states that "it shall be unlawful to coerce, intimidate, threaten or interfere in any way with an individual in the exercise or enjoyment of... any right granted or protected" by the ADA.

53.    The City violated Section 12203(b) by subjecting Sgt. Huckelbery to intimidation, coercion, and threats of termination, all of which interfered with her exercise and enjoyment of the right to reasonable accommodations and a workplace free from discrimination on the basis of her disability.

54.    As a result of the City's interference with her exercise of rights under the ADA, Sgt. Huckelbery has suffered damages, including the loss of compensation, physical pain and

suffering, and mental and emotional distress. Sgt. Huckelbery also has incurred, and will continue to incur, legal fees and costs associated with the vindication of her rights.

## DEMAND FOR RELIEF

WHEREFORE, Sgt. Huckelbery respectfully demands judgment against the City of Orlando for the following damages incurred:

i.    Lost wages and benefits;

ii.    Compensatory damages for physical pain and mental and emotional distress;

iii.    Prejudgment interest;

iv.    Reasonable attorneys' fees and costs, pursuant to the ADA and

v.    Any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues before this Court.

Date:   November 19, 2014.

Respectfully submitted,

*Jill S. Schmug*

Jill S. Schwartz, Esquire
Florida Bar No. 0523021
Kimberly D. Webb, Esquire
Florida Bar No. 0537306
Michael J. Farrell, Esquire
Florida Bar No. 053228
Alfred Truesdell, Esquire
Florida Bar No. 0885363
JILL S. SCHWARTZ & ASSOCIATES, P.A.
655 W. Morse Boulevard, Suite 212
Winter Park, Florida 32789-3745
Telephone: (407) 647-8911
Facsimile: (407) 628-4994
E-mail: jschwartz@schwartzlawfirm.net
E-mail: kwebb@schwartzlawfirm.net
E-mail: mfarrell@mjfarrelllaw.com
E-mail: atruesdell@schwartzlawfirm.net

Attorneys for Plaintiff

11

## VERIFICATION

Personally appeared before the undersigned, RHONDA HUCKELBERY, who being first duly sworn, deposes and says that the allegations of this Verified Complaint and Demand for Jury Trial, consisting of paragraphs 1 through 54, Demands for Relief, and a Demand for Jury Trial, are true and correct to the best of her knowledge, information and belief.

_____
RHONDA HUCKELBERY

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me this 19th day of November, 2014 by RHONDA HUCKELBERY, who is personally known to me or who has produced _____ as identification, and who did take an oath.

_____
Notary Public – State of Florida at Large
My Commission Expires: 12/14/2014

JANE M. TACKTILL
MY COMMISSION # EE 665056
EXPIRES: December 14, 2014
Bonded Thru Notary Public Underwriters